[No. 2054-2.    Division Two.    February 4, 1976.]

SUPERIOR COURT OF THE STATE OF WASHINGTON FOR PIERCE COUNTY, *Respondent*, v. JOHN MELVIN COVILLE, *Petitioner*.

*Adam Kline,* for petitioner.

*Donald Herron, Prosecuting Attorney,* and *Joseph D. Mladinov, Special Counsel,* for respondent.

[As amended by order of the Court of Appeals February 10, 1976.]

PETRIE, C.J.—Petitioner, John Melvin Coville, asked this court to review an order of the superior court denying his motion to vacate a previous order which had committed him to Rainier State Hospital as a criminally insane person. We issued the writ and reviewed the matter. Following review, we now dissolve the writ previously issued.

The essential issue presented is whether a court, once having entered a judgment of acquittal on the grounds of

insanity pursuant to RCW 10.77.080, may subsequently vacate that acquittal—even upon the defendant's own motion —on the grounds that at the time the acquittal was entered he was (and the court specifically found that he was) incompetent to stand trial. We hold that a court does not have that authority, at least while the defendant remains incompetent.

A recital of the procedural history seems appropriate in order to savor the adversarial atmosphere preceding the entry of the commitment order. On April 19, 1974, the defendant was charged with carnal knowledge of an 11-year-old girl allegedly committed on April 18. At arraignment and after appointment of counsel, the court accepted a plea of not guilty and set dates for an omnibus hearing and for trial.

On May 2 the defendant was admitted to Western State Hospital for 15 days pursuant to a court order directing psychological and psychiatric examinations to determine whether the defendant was competent to stand trial and whether the defendant was able to distinguish between right and wrong on April 18, 1974. After determining that Mr. Coville was mentally retarded from a mild to moderate degree, the staff report to the court, dated May 8, concluded[1] in part:

---

[1]The complete conclusions in the report were:

"The result of our overall examination and observation reveals that Mr. Coville is mentally retarded, that his mental retardation is from a mild to moderate degree, and that this mental retardation is probably associated with his endocrinological problems. In the examination he showed overall impoverishment in his mental abilities and in his intelligence, very immature emotions, very poor imaginative abilities and over all simplicity of his mind. Although Mr. Coville was very friendly and cooperative during the course of his hospitalization, he was not able to give satisfactory information about himself since he does not remember many things due to his very poor intellectual abilities. However, the patient is not psychotic and within his intellectual limits, he is coherent and his thought process is organized. He did not show any hallucinations or delusions. His memory was impaired due to mental retardation and, in this respect, he cannot be held responsible for his alleged criminal conduct.

"The patient very vehemently denies any carnal knowledge. He claims he never touched the eleven year old girl and didn't even know

His memory was impaired due to mental retardation and, in this respect, he cannot be held responsible for his alleged criminal conduct.

Because of the simplicity of his mind, he has limited abilities to assist his attorney in his own defense and limited abilities to stand trial.

At the omnibus hearing on June 14, the defendant entered a special plea of not guilty by reason of insanity. After considering matters presented at the hearing, the court ordered the child victim and her mother be deposed on June 21, denied defendant's "Motion to Dismiss" which had been based upon the May 8 report from Western State Hospital, but granted defendant's motion for psychiatric examination by Dr. Antone Walloch at county expense.

By an amended information filed on June 24, the charge against Mr. Coville was changed from carnal knowledge to indecent liberties. On June 25 the court granted defendant's motion in limine (prohibiting prosecutorial reference to the defendant's alleged participation in a similar act in 1972), directed examination of the defendant pursuant to RCW 10.77.060 by Dr. Donald Allison, struck the trial date, and set a hearing date of July 3 on defendant's motion "for a continuance of the trial in this cause and for a finding of 'Not Guilty' by reason of insanity and mental irresponsibility."

On July 3, after hearing the testimony of two psychiatrists and a clinical psychologist, the court entered an "Order Finding Defendant Not Guilty and Order of Commitment," which found and ordered as follows:

The Court finds that the defendant, John Melvin Coville, has the mental capacity of a child, age approxi-

---

her. Because of the simplicity of his mind, he has limited abilities to assist his attorney in his own defense and limited abilities to stand trial. However, the patient does not suffer from any mental illness and he has a specific endocrinological problem. Therefore the treating team at Western State Hospital would like to recommend he be sent back to the Rainier School for additional treatment or to some other facility for mentally retarded young people where there is a program to acquire an appropriate vocation or trade consistent with the intellectual abilities of these young people."

mately five to six years. *The Court* further *finds* that the said *defendant does now lack the capacity to understand the proceedings against him and to assist in his own defense* as a result of mental disease or defect; and the Court further finds that *on April 18, 1974, the defendant* lacked the capacity to know or appreciate the nature and consequences of his conduct and further, *failed to know or appreciate the criminality of his conduct.* Now, therefore, it is hereby

ORDERED, ADJUDGED AND DECREED that *the defendant* be, and he hereby *is,* found to be *not guilty of the crime charged in the Information,* because on April 18, 1974, he did lack the capacity to know or appreciate the nature and consequences of his conduct and further, did lack the capacity to know or appreciate the criminality of his conduct. It is hereby further

ORDERED, ADJUDGED AND DECREED that, in accordance with Section 9 of Chapter 117, 1973 First Extra Session[2] of the Laws of the State of Washington, the Court does find that the defendant is not safe to be at large at this time and accordingly, he is committed to Rainier State School, Buckley, Washington, until such time as he is safe to be at large or until the further Order of the Court.

(Italics ours.)

The order committing the defendant to Rainier State School was subsequently renewed on three separate occasions, and on each occasion Mr. Coville was found not safe to be at large. On June 5, 1975, Mr. Coville's court-appointed counsel withdrew, and 4 days later defendant's present counsel filed a motion asking the court "to issue an order vacating the verdict of not guilty by reason of criminal insanity and the commitment of the defendant to Rainier School as a criminally insane person pursuant to Chapter 10.77 RCW, . . ."

Mr. Coville does not appear to be necessarily seeking release from custody. Instead, the motivating reason for

---

[2]All parties appear to have been proceeding under the provisions of Laws of 1973, 1st Ex. Sess., ch. 117, which originally created RCW 10.77, despite the fact that the entire chapter had been amended by Laws of 1974, 1st Ex. Sess., ch. 198, effective May 6, 1974.

seeking vacation of Mr. Coville's acquittal appears to be that the opprobrious label "criminally insane" presents barriers to community placement and impairs the effectiveness of his treatment. The legal reasons for seeking the vacation appear to be (1) an incompetent person has a statutory and constitutional right not to be tried for a criminal offense; and (2) a person charged with a crime and found by a court to be incompetent to stand trial has a statutory and constitutional right to be subjected to custody and release procedures available to incompetent persons. We accept as correct the defendant's assertion that he has not waived either of these rights.

As to the first contention, RCW 10.77.050 is quite explicit:

> No incompetent person shall be tried, convicted, or sentenced for the commission of an offense so long as such incapacity continues.

The defendant was, however, subjected to the procedure authorized by RCW 10.77.080:

> The defendant may move the court for a judgment of acquittal on the grounds of insanity: *Provided*, That a defendant so acquitted may not later contest the validity of his detention on the grounds that he did not commit the acts charged. At the hearing upon said motion the defendant shall have the burden of proving by a preponderance of the evidence that he was insane at the time of the offense or offenses with which he is charged. If the court finds that the defendant should be acquitted by reason of insanity, it shall enter specific findings in substantially the same form as set forth in RCW 10.77.040 as now or hereafter amended. If the motion is denied, the question may be submitted to the trier of fact in the same manner as other issues of fact.

RCW 10.77.080 does not deprive any defendant of the right to trial; it is a statutory alternative to a jury trial, available to the defendant at his own election. *State v. Jones*, 84 Wn.2d 823, 529 P.2d 1040 (1974). Whether or not Mr. Coville validly elected to submit to the statutory alternative is not before us. *See State v. Walker*, 13 Wn. App.

545, 536 P.2d 657 (1975); *but cf. State v. Stern,* 40 N.J. Super. 291, 123 A.2d 43 (1956). Through an alternative process, the court has *acquitted* him of the crime charged, even though that acquittal burdens him with statutorily mandated custodial impediments. Although the court's pronouncement did not occur after a trial on the merits, the defendant is now armed with a judicial proclamation that prohibits him forever from being tried for the crime charged in the information. *See State v. Strasburg,* 60 Wash. 106, 110 P. 1020 (1910). Thus, the simple but complete answer to the defendant is that he has not yet been, nor can he ever be, tried on the merits for the crime with which he has been charged. By reason of the statutory alternative, burdens have been imposed upon him, but he. has also acquired a new and valuable right.

Mr. Coville, although still incompetent, contends through his present counsel that *the court should not have acquitted him* and subjected him to the custodial impediments which flow through that acquittal because RCW 10.77.090 provides in part:

> (1) If at any time during the pendency of an action and prior to judgment, the court finds . . . that the defendant is incompetent, the court shall order the proceedings against him be stayed, . . . until he has regained the competency necessary to understand the proceedings against him and assist in his own defense,
> . . .

■ If Mr. Coville had now regained his competency and had knowingly, voluntarily, and intentionally sought to waive the new right which he acquired through the efforts of his prior counsel, we might be more inclined to evaluate the power of the court to vacate his acquittal from a different viewpoint. However, the posture of the case before us is that two different, competent counsel viewing Mr. Coville at two different times and from two differing vantage points each purport to act in an incompetent's best interests. If the court has the power to grant present counsel's petition to vacate the acquittal while Mr. Coville is still incompetent, it

is not inconceivable that a third counsel, equally competent and equally well motivated, may view Mr. Coville from still a third viewpoint at some time in the future and petition the court to vacate the vacation order. We hold that during Mr. Coville's continuing incompetency no court can deprive him of the rights acquired by reason of his acquittal.

We turn then to the defendant's second contention—that he should be subjected to the custody and release provisions available to persons found incompetent to stand trial on a criminal charge. The same order which found him incompetent also found him criminally insane at the time of the alleged commission of the crime. We cannot vacate the criminally insane finding without simultaneously subjecting him to the possibility that criminal sanctions may be imposed at some time in the future.

■ If we were viewing this issue as a matter of first impression, we would be tempted to view Mr. Coville's contention somewhat more favorably than we are now required to view it. Recently, it has been determined definitively that an insanity-acquitted person is not unconstitutionally deprived of equal protection and due process of the law because he is subjected to a commitment scheme different from the scheme to which mentally ill persons, as defined by RCW 71.05, are subject. *Alter v. Morris*, 85 Wn.2d 414, 536 P.2d 630 (1975). Accordingly, we must conclude that the court's finding that Mr. Coville was both incompetent and criminally insane does not automatically subject him to the commitment scheme provided in RCW 71.05.

Under the present posture of the case before us, we hold (1) the trial court had no authority to vacate the order of acquittal and (2) Mr. Coville is not being subjected to improper custodial restraint pursuant to that order.

Judgment affirmed.

PEARSON and REED, JJ., concur.

Petition for rehearing denied February 26, 1976.

Review granted by Supreme Court April 23, 1976.